FILED
2015 Aug-31  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| FREDERICK L. BOYD, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 1:14-cv-01110-HGD |
| ) | |
| FREDERICK MONTEZ BOYD, ) | |
| ) | |
| Defendant ) | |

## **REPORT AND RECOMMENDATION**

This case began as an interpleader action by Prudential Insurance Company of North America (Prudential). Cormella Boyd had a life insurance policy through Prudential's group insurance plan for Wal-Mart. Frederick Montez Boyd is her son.[1] The basic life insurance available under the policy was $37,000; optional term life available was $200,000; and accidental death and dismemberment coverage was

---

[1] At the commencement of this litigation, Frederick Montez Boyd was a minor. Therefore, he was referred to by his initials, F.B. The court appointed his maternal grandmother, Charity Teague, as his guardian *ad litem*. Since that time, Frederick Montez Boyd has reached the age of majority. Therefore, the case caption has been amended to reflect that F.B. is identified as Frederick Montez Boyd, and Charity Teague has been discharged and dismissed from her duties as guardian *ad litem*. (*See* Doc. 26).

$200,000. Frederick Boyd, Cormella Boyd's husband, was designated as the primary beneficiary under the policy. Frederick Montez Boyd is the alternative beneficiary.

On July 23, 2012, the insured died from multiple gunshot wounds. Frederick Boyd has been charged with her murder in Calhoun County Circuit Court. On October 2, 2014, Frederick Boyd was found to be incompetent to stand trial and was committed to Taylor Hardin Secure Medical Facility until such time as he could be restored to competence. (Doc. 21-1, Order of Commitment to the Alabama Department of Mental Health). Subsequently, Prudential paid the proceeds due under the policy into the office of the Clerk for the U.S. District Court for the Northern District of Alabama and was dismissed from the case. That sum was $548,556.14. (Doc. 15).

The parties were then realigned and the Court retained jurisdiction to settle and adjust the claims to this money and determine to whom the total funds are to be paid. (Doc. 18, Partial Final Judgment under Fed.R.Civ.P. 54(b)).

On January 13, 2015, counsel for Frederick Montez Boyd filed a motion to approve distribution of the interpled funds to Frederick Montez Boyd, alleging that Frederick Boyd is precluded from receiving any payment of this money due to the fact that he is the undisputed killer of the insured. (Doc. 19, Motion to Approve Disbursement of Interplead Funds).

Frederick Boyd, through his court-appointed guardian *ad litem*, William H. Broome, answered this motion opposing the distribution of funds on the ground that there has been no adjudication that plaintiff "feloniously and intentionally" killed Cormella Boyd as is required by *Ala. Code* § 43-8-253. He noted that plaintiff has been committed to Taylor Hardin Secure Medical Facility after having been found incompetent to stand trial. Likewise, since he has not yet stood trial, there is no adjudication of plaintiff's guilt of the murder case pending against him. Frederick Boyd seeks to have this motion denied and that any further proceedings be stayed pending a final judgment in plaintiff's murder case pending in Calhoun County Circuit Court. (Doc. 21, Plaintiff's Response to Motion to Approve Disbursement of Interplead Funds).

On August 26, 2015, a telephone conference was held with counsel/guardian *ad litem* for Frederick Boyd and counsel for Frederick Montez Boyd. The purpose of the call was to determine if it appeared that there was any possibility that plaintiff might be restored to competence in a reasonable amount of time such that he might be able to stand trial on the pending murder charge. Plaintiff's counsel/guardian *ad litem*, William H. Broome, reported that he had met with Mr. Boyd recently, accompanied by the attorney appointed to represent Boyd on the murder charge. Mr. Broome reported that Mr. Boyd is a former police officer that he had encountered in

numerous cases that he had handled as an attorney in years past. Despite this, he stated that Mr. Boyd no longer recognized him and only recognized his appointed criminal defense counsel as someone who looked familiar. It is Mr. Broome's opinion that he does not believe Mr. Boyd will be restored to competency any time soon so as to be able to stand trial on the murder charge.

Although the order of commitment required the trial judge to review plaintiff's competency every six months, there is no indication that his most recent evaluation reflected any improvement in his condition. (*See* Doc. 29). Consequently, it is possible that it could be years before Mr. Boyd is restored to competence, if ever. However, despite the current incompetence of Frederick Boyd, counsel for Frederick Montez Boyd states that she believes she can demonstrate that, at the time Cormella Boyd was killed by Frederick Boyd, the killing was felonious and intentional.

Pertinent Alabama law states as follows:

> A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whom whose life the policy is issued is not entitled to any benefit under the bond, policy or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.

*Ala. Code* § 43-8-253(c).

> A final judgment of conviction of felonious and intentional killing is conclusive for purposes of this section. In the absence of a conviction

of felonious and intentional killing the court may determine by a preponderance of the evidence whether the killing was felonious and intentional for purposes of this section.

*Ala. Code* § 43-8-253(e). The Comments to this code section state, in pertinent part, as follows:

> While a conviction in the criminal prosecution under this section is treated as conclusive on the matter of succession to the murdered person's property, acquittal does not have the same consequences. This is because different considerations as well as a different burden of proof enter into the finding of guilty in the criminal prosecution. Hence, it is possible that the defendant on a murder charge may be found not guilty and acquitted, but if the same person claims as an heir or devisee of the decedent, he may in the probate court be found to have feloniously and intentionally killed the decedent and thus be barred under this section from sharing in the estate. An analogy exists in the tax field, where a taxpayer may be acquitted of tax fraud in a criminal prosecution but found to have committed the fraud in a civil proceeding. In many of the cases arising under this section there may be no criminal prosecution because the murderer has committed suicide.

*Ala. Code* § 43-8-253, Comments.

Consequently, an interpretation of this code section reflects that a person who "feloniously and intentionally" kills the insured under a policy of insurance cannot receive the proceeds, and the distribution of those proceeds is accomplished as if the killer had predeceased the insured. According to the statute, a prosecution in a criminal trial that results in a conviction for "feloniously and intentionally" killing the insured is conclusive evidence that the killer is not entitled to the proceeds under the

policy. However, if the killer is not convicted, or even acquitted, the reverse is not necessarily true. Because the burden of proof under this statute is a preponderance of the evidence, a person may be found not guilty of the criminal charge of killing the insured, but still be found, by a preponderance of the evidence, to have "feloniously and intentionally" committed the killing in a proceeding under this statute. In fact, there could be no criminal trial at all and, if the preponderance of evidence standard is met, the killer may be held to be precluded from receiving any proceeds under the policy.

Nothing contained in the statute or any case law interpreting it requires that a court wait until there is a criminal proceeding to determine whether a party is entitled to the proceeds under this statue. In this case, waiting for such an event could take years, or might never occur at all.

Under these circumstances, and in order to bring some finality to these proceedings, it is RECOMMENDED that the District Court set this matter for hearing to determine whether the killing of Cormella Boyd by Frederick Boyd was "felonious and intentional" under *Ala. Code* § 43-8-253(c), in order to determine the proper party to whom the interpled funds should be distributed. Counsel for Frederick Montez Boyd has indicated that she is in need of some time to perform discovery and prepare for such a hearing and further indicated that a period of about six months

should be sufficient. Counsel/guardian *ad litem* for Frederick Boyd indicated that he is not opposed to such a time-frame.

### NOTICE OF RIGHT TO OBJECT

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the complaint also must be included.** Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B 1982) (*en banc*), *overruled by Douglass v. United Service Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), *superseded by statute* Federal Magistrates Act, Pub.L. No. 111-16, 123 Stat. 1608 (codified as amended at 28 U.S.C. § 636(b)(1) (2009); *see Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

DONE this 31st day of August, 2015.

*[signature]*
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE